Jones, Plaintiff in Error, v. Sutton, Defendant in Error.

1. Contracts—Contemporaneous Agreements.
Agreements which are·executed contemporaneously, relating to the same subject-matter and referring to each other, are to be construed together.

2. Collateral Security—Accounting.
It appearing that stock of a corporation had been deposited as security for the payment of certain notes and other advances, it is *held,* under the circumstances of this case, that no judgment based on either of the notes should be allowed until the disposition of the stock shall have been accounted for.

*Error to the District Court of Arapahoe County.*

DURING the lifetime of Isaac Cooper he became interested in the Roaring Fork Improvement Company with W. Henry Sutton, defendant in error, and likewise with one Bradley in the Pearl Mining Company. Both corporations were stocked and bonded, and their certificates and bonds were dealt in by the parties. While Cooper was living he received from Sutton various sums of money for which Sutton claims he died indebted. The advances amount to $16,750.

In the transactions resulting in the acquisition of title to the mining property, Cooper became indebted to divers parties, and the indebtedness was evidenced by sundry notes. After his decease, Jones was appointed administrator by the county court of Arapahoe county, and proceeded to wind up the estate. In the course of the administration Sutton filed claims against the estate on four promissory notes, two of $5,000 each, one of $1,500 and one of $1,000. At about the time these claims were filed, or concurrently therewith, Sutton also filed some proofs of the claim of $16,750. The county court seems not to have considered these claims concurrently, but disallowed the notes, entering a final order to that end. From this order Sutton appealed to the district court. Afterwards, the administrator was notified that this unliquidated claim of $16,750 would be presented for allowance. It was contested and judgment rendered in favor of the estate. From this finding Sutton appealed, and the case was docketed in the district court as a separate case. At some time either before or after the case reached the district court, the parties reduced their respective claims to writing, and the matter stood for trial. Upon the issues thus formed upon the various claims the court set down both cases for hearing upon the same day, with the suggestion that unless some reason was shown to the contrary, they would be consolidated prior to the trial. The court ordered the two matters to be consolidated as one case, and while the evidence was taken separately they were treated as one case for the purposes of disposition. At the hearing the $1,500 note and one of the $5,000 notes were withdrawn. The claim of the $1,000 note

was allowed with interest. On the $5,000 note remaining, Sutton was allowed to recover one half with interest, said note so allowed, with interest, aggregating the sum of $6,611.45. The claim of Sutton for $16,750 was disallowed. A single judgment was entered in accordance with said findings for the sum of $6,611.45. To this judgment the administrator sued out a writ of error from this court. Sutton likewise sued out a writ of error from the court of appeals, and thereby attempted to review that part of the judgment which found him disentitled to recover upon the $16,750 claim. The court of appeals becoming advised of the situation, upon reaching the case for hearing, suggested that, as there was but one judgment, but one review could be had; whereupon, by stipulation, the record in that court was brought into this court, and consolidated with the case already here.

The rights of the parties are largely dependent upon two written agreements, and collaterally upon a third, which is prior in date. This prior agreement is set forth in the case of *Jones, Administrator, v. Perot*, decided at this term (*ante* 141). The remaining agreements are as follows:

" This agreement made this 1st day of May, A. D. 1882, by and between Isaac Cooper, of Denver, Colorado, of the first part, W. Henry Sutton, of Philadelphia, Pennsylvania, of the second part, and D. H. Bradley, of Denver, Colorado, of the third part, witnesseth:

" That for and in consideration of twelve thousand (12,000) dollars (in hand paid) to said Isaac Cooper by said W. Henry Sutton, the receipt whereof is hereby acknowledged, and in consideration further of the sum of four thousand seven hundred and fifty (4,750) dollars acknowledged to have been paid heretofore to said Isaac Cooper by said W. Henry Sutton, in consideration further of eleven thousand nine hundred and ninety-four (11,994) shares of the capital stock of The Roaring Fork Improvement Company transferred and set over to said Isaac Cooper by said W. Henry Sutton, and in consideration further of the sum of thirteen thousand (13,000) dollars to be paid to said Isaac Cooper by said W.

Henry Sutton, according to the terms of an agreement this day executed between said Isaac Cooper and said W. Henry Sutton, and in consideration furthermore of the expenses incurred and services heretofore rendered and intended to be hereafter rendered by said W. Henry Sutton and said D. H. Bradley in the organization of The Pearl Mining Company, the said Isaac Cooper covenants and agrees:

"*First*—To and with said W. Henry Sutton, and it is hereby mutually agreed by and between said Isaac Cooper and said W. Henry Sutton, that they are joint owners and equal partners in and to all the capital stock and bonds of The Roaring Fork Improvement Company now owned or held by said Isaac Cooper or said W. Henry Sutton or that may be acquired hereafter by either of them, and it is further covenanted and agreed that all expenses incurred and outlays made by either party hereto hereafter in connection with the conduct of the affairs of The Roaring Fork Improvement Company, are to be equally shared by said Isaac Cooper and said W. Henry Sutton; and it is furthermore understood and agreed that all the responsibilities attaching to said Isaac Cooper under and in accordance with the terms of an agreement made between said Isaac Cooper and the bondholders of The Roaring Fork Improvement Company and now filed with The Guarantee Trust and Safe Deposit Company of Philadelphia, are to be equally shared by said Isaac Cooper and said W. Henry Sutton ; and it is further understood and agreed that monthly settlements of the expenses incurred and outlays made by either party hereto, shall be made between the said parties, and that the profits that may accrue are to be divided equally share and share alike at such times as may be hereafter mutually agreed upon between the parties hereto, and further that an equal division of the stocks and bonds of the said company may be made and this joint ownership and equal partnership terminated at any such time as may hereafter be mutually agreed upon between the said Isaac Cooper and the said W. Henry Sutton.

." Said Isaac Cooper covenants and agrees :

" *Second*—To and with said W. Henry Sutton and said D. H. Bradley, and it is mutually understood and agreed by and between said Isaac Cooper, said W. Henry Sutton and said D. H. Bradley that said Cooper is to transfer to said D. H. Bradley all the stock of The Pearl Mining Company that now stands or that should now stand in the name of said Isaac Cooper. And that said W. Henry Sutton is to transfer to said D. H. Bradley any of the stock of The Pearl Mining Company that he may hold when it has been released by the payment to him of moneys advanced, and it is hereby mutually understood and agreed that the stock so transferred by said Isaac Cooper and said W. Henry Sutton to said D. H. Bradley is to be held by said D. H. Bradley in trust for the purpose and with the power to sell so much of said stock as may be necessary to raise moneys equal in amount to the actual cash purchase price to said Isaac Cooper of all of the sixteen (16) properties of The Pearl Mining Company over and above the actual amount of cash subscribed by the bondholders of The Roaring Fork Improvement Company under the agreement between them and said Cooper before referred to, together with the actual cash outlay of said W. H. Sutton heretofore made in connection with the aforesaid companies. And it is also agreed that said D. H. Bradley is to have power to secure any loan necessary to carry out the objects of this agreement and to hypothecate so much of said stock so held by him in trust as may be necessary to effect such loan, together with the interest thereon. It is also understood that all moneys so raised or borrowed by said D. H. Bradley are to be turned over to said W. Henry Sutton to be disposed of in accordance with an agreement between said W. H. Sutton and Isaac Cooper of this date before referred to.

" It is also understood and agreed by all the parties hereto that after the amount of money aforesaid has been raised and all loans repaid, if any have been made, that then said D. H. Bradley, acting as trustee, is to divide equally between the parties hereto the stock of The Pearl Mining Company remaining in his hands; that the said Isaac Cooper is

to receive one-third, said W. Henry Sutton is to receive one-third, and said D. H. Bradley is to receive one-third.

"It is also understood and agreed that this trust may be terminated at any time that any two of the parties hereto may so desire, and in that event the stock shall be re-transferred by said D. H. Bradley to the parties from whom it was received for the equal benefit of said Cooper and said Sutton.

"In witness whereof, we have hereunto set our hands and seals at Philadelphia, state of Pennsylvania, the day and year first above written.

|  |  |
|---|---|
| "ISAAC COOPER, | [SEAL] |
| "W. HENRY SUTTON, | [SEAL] |
| "D. H. BRADLEY." | [SEAL] |

SECOND AGREEMENT.

"Whereas, in an agreement made this first day of May, A. D. 1882, between Isaac Cooper, W. Henry Sutton and D. H. Bradley, it is stipulated and agreed that the moneys received by D. H. Bradley, from the sale of the stock of The Pearl Mining Company are to be turned over to said W. Henry Sutton, and whereas it is also stipulated in the same agreement that said W. Henry Sutton is to pay to said Isaac Cooper the sum of thirteen thousand (13,000) dollars in accordance with the terms of an agreement of an even date.

"Now, Therefore, this agreement made this 1st day of May, A. D. 1882, by and between Isaac Cooper of Denver, Colorado, and W. Henry Sutton of Philadelphia, Pennsylvania:

"Witnesseth, that of the moneys so received by said W. Henry Sutton from D. H. Bradley, the sum of three thousand (3,000) dollars is to be paid to said Isaac Cooper, the sum of ten thousand (10,000) dollars is to be applied to the payment of two notes of five thousand (5,000) dollars each, given by said Isaac Cooper to M. F. Simmons and endorsed by W. Henry Sutton, and sixteen thousand seven hundred and fifty (16,750) dollars is to be retained by said W. Henry Sutton

as repayment to him of moneys advanced to said Isaac Cooper, and further that said W. Henry Sutton is to retain any additional amount that he may have advanced to Isaac Cooper in connection with the matters of The Pearl Mining Company, that has not been otherwise repaid; and further that D. H. Bradley is to be paid ten per cent of the amounts received from the sale of The Pearl Mining Company's stock at sixty cents per share or over.

" And further that the payment of thirteen thousand (13,000) dollars, referred to, to be made by said W. Henry Sutton to said Isaac Cooper, is only to be made in the event of the receipt of that amount by said W. Henry Sutton from said D. H. Bradley, and that, in that event, of this amount so provided for, said Isaac Cooper is to receive three thousand (3,000) dollars, and the balance, ten thousand (10,000) dollars, is to be applied to the payment of said Isaac Cooper's notes to M. F. Simmons before referred to.

" And it is stipulated and agreed by the parties hereto, that in the event of said W. Henry Sutton not receiving from D. H. Bradley the amount of moneys so stipulated to be paid to said Isaac Cooper and to said M. F. Simmons, that then in that event, said W. H. Sutton is to be released from the payment of three thousand (3,000) dollars to said Isaac Cooper, and said Isaac Cooper and said W. Henry Sutton are to be jointly liable for the amount of said notes given to said M. F. Simmons.

" And it is further stipulated and agreed that in event of either party hereto taking stock of The Pearl Mining Company for payments that were otherwise to have been made in cash, that such stock shall be taken on the basis of fifty cents per share.

" In witness whereof, we have hereunto set our hands and seals at Philadelphia, this 1st day of May, A. D. 1882.
                    " ISAAC COOPER,      [SEAL.]
                    " W. HENRY SUTTON."  [SEAL.]

Messrs. BENNET & BENNET, for plaintiff in error.

Mr. R. D. THOMPSON and Mr. W. HENRY SUTTON, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The appeal as taken from the county to the district court was properly taken under the amendment of 1891.  See Session Laws, 1891, pp. 108, 109.

The main contention in this court, as in the county and district courts, has reference to the proper construction of the two written contracts of May 1, 1882.  These agreements were executed contemporaneously, and relate to the same subject-matter; they refer one to the other and are to be construed together.

The first of these agreements also refers to, and is based upon a prior agreement executed between Isaac Cooper and the bondholders of The Roaring Fork Improvement Company.  This agreement will be found specifically set forth in the case of *Jones, Administrator, v. Perot*, decided at this term, *ante*, p. 141.  An examination of this prior agreement discloses that both Cooper and Sutton were interested in the stock and bonds of The Pearl Mining Company and of The Roaring Fork Improvement Company.  In the carrying out of the enterprise undertaken by these companies, the expenditure of large sums of money was contemplated, and it was expected that handsome profits would be realized.

The agreement of May 1, 1882, between Cooper, Sutton and Bradley is plain and unambiguous, if the agreement between Cooper and the bondholders be borne in mind.  From these and the evidence before us relating to the account claimed by Sutton of $16,750, it appears that this sum is made up of $4,750 theretofore paid to Cooper, and the sum of $12,000 paid at the time of the execution of this tripartite agreement.  These amounts constituted a part of the consideration paid by Sutton for an equal interest with Cooper in the stock and bonds of The Roaring Fork Improvement Company then owned, or that might thereafter be acquired,

by either of the parties.  By the first of the agreements of May 1, 1882, in the order in which they appear in the statement preceding this opinion, Cooper assumes no personal liability for the repayment of this sum of $16,750, or any part thereof.

It is contended, however, that Cooper did obligate himself personally to repay this money to Sutton by the second agreement of May 1, A. D. 1882.  The argument in support of this contention is based upon the statement in this agreement that said sum was *advanced* to Cooper by Sutton.  It is claimed that the primary and usual meaning of the word advanced, when used in connection with the payment of money, means the payment of money to be refunded.  This conclusion does not seem to rest upon any substantial basis.  Moreover, as we have heretofore shown, the two contracts of May 1, 1882, are to be construed together, and when so construed it is clear that this sum was paid to Cooper as part of the consideration for an additional interest on the part of Sutton in certain stock and bonds.  The only provision made for its repayment to be found in the first is that Cooper and Sutton were to deposit with Bradley, as trustee, a large amount of stock of The Pearl Mining Company, to be sold or hypothecated for the purpose of raising money, the proceeds to be used, first, to repay the amounts advanced by each, viz.: "The actual cash purchase price to said Isaac Cooper of all of the sixteen (16) properties of The Pearl Mining Company over and above the actual amount of cash subscribed by the bondholders of The Roaring Fork Improvement Company under the agreement between them and said Cooper before referred to, together with the actual cash outlay of said W. H. Sutton heretofore made in connection with the aforesaid companies."

This is made more specific by the language of the second agreement to which Cooper and Sutton are the only parties, to wit: "That of the moneys so received by said W. Henry Sutton from D. H. Bradley, the sum of three thousand (3,000) dollars is to be paid to said Isaac Cooper the sum of

ten thousand (10,000) dollars is to be applied to the payment of two notes of five thousand (5,000) dollars each, given by said Isaac Cooper to M. F. Simmons and endorsed by W. Henry Sutton, and sixteen thousand seven hundred and fifty (16,750) dollars is to be retained by said W. Henry Sutton as repayment to him of moneys advanced to said Isaac Cooper, and further that said W. Henry Sutton is to retain any additional amount that he may have advanced to Isaac Cooper in connection with the matters of The Pearl Mining Company, that has not been otherwise repaid; and further that D. H. Bradley is to be paid ten per cent of the amounts received from the sale of The Pearl Mining Company's stock at sixty cents per share or over."

It is shown that the two notes of $5,000 each, given by Cooper to M. F. Simmons, were executed as part of the purchase price of the sixteen mining properties, conveyed first to Cooper and by Cooper to The Pearl Mining Company.

From the foregoing it will be seen that the only provision for the repayment of the amounts advanced by either was that such repayment should be made out of the proceeds of the stock held in trust by Bradley. Neither party assumed any personal liability to the other for the payment of any part of these sums; therefore the disallowance of the claim of Sutton upon the $16,750 account was proper.

In view of the foregoing analysis of the two written instruments of May 1, 1882, it is apparent that the demand for an accounting made by the administrator of the Cooper estate in the court below should have been allowed. In no other way can the rights of the parties be intelligently adjusted. Independently of such an accounting the judgment of the court below in favor of Sutton upon one of the $5,000 notes in controversy cannot be sustained. The stock deposited with Bradley was to secure the payment of these two notes, and other advances made by the parties. Until the disposition of this stock has been accounted for no judgment should be allowed in favor of either of the parties against the other, based upon either of these $5,000 notes. In adjusting

the various claims between the parties, it will be necessary for the court to inquire into what disposition, if any, has been made of the second of those $5,000 notes. The evidence in support of this claim was withdrawn from the consideration of the county court prior to its decision, and in the district court the claim itself was withdrawn. We are not advised as to whether such note has been paid. If it should be shown that it has been paid by Cooper, then Sutton certainly is not entitled to recover anything upon the remaining note, for the reason that under the first agreement of May 1, 1882, it was provided that all expenses incurred and outlays made by either party in connection with the business were to be equally shared by Cooper and Sutton. Therefore, whatever payments have been made on either of these notes should be considered in any accounting that may be had.

The allowance of the claim upon the $1,000 note in the district court does not appear to be open to any of the objections not hereinbefore specified. From aught that appears by the pleadings or proof, this one thousand dollar note evidenced an independent transaction between the parties, or at least a transaction not covered by either of the agreements hereinbefore referred to. The loss of the note having been accounted for satisfactorily to the court below, it was proper to introduce secondary proof of the instrument. It is unnecessary to consider in detail the objections urged on the allowance of this note. They are all technical in character and do not go to the substantial merits of the controversy. Although the judgment of the court below must be reversed, the claim upon the $1,000 note should in all subsequent proceedings be taken as established in favor of Sutton, and credit given accordingly.

The judgment of the district court will be reversed with instructions by that court to order Sutton to file a complaint analogous to a bill in equity, wherein he shall set up, according to well settled rules of pleadings, all the various claims, matters and controversies between him and the estate of the deceased Cooper, as to which he may deem himself possessed

of either legal or equitable rights. The administrator shall be likewise ordered to plead to such complaint, setting up whatsoever of defense, legal or equitable, he may deem available.

If there are other suits pending between the parties, involving matters growing out of these agreements, as alleged in defendant's answer, then the district court should consolidate such suits with this, so far as the same can be consistently done in accordance with good practice, to the end that all controversies between the parties growing out of such agreements may, so far as possible, be settled in óne action.

*Reversed.*